IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DENNELL HARRISON )<br>)<br>Defendant. )<br>_____) | No. 17-59-GMS-1 |

## MEMORANDUM

## I.     INTRODUCTION

On July 25, 2017, the Grand Jury for the District of Delaware indicted Defendant Dennell

Harrison ("Harrison") for Stealing Firearms From a Federally Licensed Firearms Dealer, 18 U.S.C.

§§ 922(u) and 2; Conspiring to Steal Firearms from a Federally Licensed Firearms Dealer, 18

U.S.C. § 371; and Possession of a Firearm by a Prohibited Person, 18 U.S.C. §§ 922(g)(1) and

924(a)(2). (D.I. 12.)  Presently before the court is Harrison's Motion to Suppress Evidence. (D.I.

26.)  The court held an evidentiary hearing on November 29, 2107 and subsequently directed the

parties to file supplemental briefing.  (D.I. 35)  After having considered the testimony elicited

during the hearing and the arguments presented in the parties' submissions on the issues, the court

will deny Harrison's motion to suppress.

## II.     FINDINGS OF FACT

At the evidentiary hearing, the United States called two witnesses: Justin Richey

("Richey"), a Dover Police Officer, and Christopher Bumgarner ("Bumgarner"), an A.T.F. Task

Force Officer.  After listening to the testimony of the witnesses, the court concludes that the

testimony provided by Richey and Bumgarner is credible. The following represents the court's essential findings of fact as required by Rule 12(d) of the Federal Rules of Criminal Procedure.

On November 29, 2016, Marshals from the United States Marshal Task Force were conducting surveillance on Harrison, and reported over the police radio the direction in which his vehicle was traveling. (Tr. 8:16–24.) Harrison, who had several outstanding warrants for his arrest at the time of the surveillance, was driving what Richey described as a silver SUV.[1] (Tr. 11:13–14, 16:21–25.) As Richey and Senior Probation Officer Dan Stagg ("Stagg")[2] were getting into Richey's vehicle to follow Harrison, the surveillance units were advising that Harrison's SUV had stopped in the parking lot of Eden Hill Medical Center on 100 Banning Street in Dover, Delaware. (Tr. 10:12–11:1, 11:6–7.)

After being informed that Harrison's vehicle had come to a stop, Richey drove about 600 yards to the scene. (Tr. 11:2–5.) He arrived in under one minute. (Tr. 23:16–23.) Richey and Stagg pulled up behind Harrison's vehicle which was parked at the northeast corner of the parking lot in an open area that was "far away" from the building, and was not near any other vehicles or pedestrians. (Tr. 11:16–18, 11:23–25, 24:8–9.) Neither the surveillance officers, nor Richey and Stagg observed anyone exit the vehicle. (Tr. 9:1–6, 11:21–22.)

Richey exited his vehicle and approached the driver's side of Harrison's vehicle. (Tr. 9:8–9.) Stagg approached the passenger's side. (Tr. 9:8–10.) Stagg informed Richey that he saw Harrison laying down in the back seat. (Tr. 9:11–12, 15:11–15.) Richey was unable to see Harrison as he approached. (Tr. 24:13–16.) As Richey began making his way around the rear of the vehicle to meet Stagg on the passenger side, Stagg was ordering Harrison to show his hands

---

[1] Both the government and Harrison have indicated in their briefing that Harrison was driving a silver Chevy Trailblazer. (D.I. 26 at 2); (D.I. 30 at 2.)

[2] Stagg did not testify at the suppression hearing.

and exit the vehicle. (Tr. 9:7–15.) When Stagg opened the SUV's backdoor, he stepped to the left "so as to not be caught behind the door." (Tr. 13:8–9.) Stagg then removed Harrison from the vehicle and placed him under arrest pursuant to outstanding warrants. (Tr. 9:18–19, 16:21–25.) Richey testified that at the time Stagg opened Harrison's door to retrieve him, he smelled the odor of marijuana. (Tr. 9:7–17, 13:14–15, 15:3–6.) Richey further testified that he did not smell marijuana at any other point before Stagg opened the SUV's door. (Tr. 15:3–6.)

Over the course of Richey's career as a Dover Police Officer and officer with the Delaware Department of Corrections, he became familiar with the smell of marijuana—encountering it "several hundred times" in its raw, burnt, freshly burnt, and stale states. (Tr. 6:7–7:20.) This experience led Richey to conclude that what he smelled when he opened the vehicle's door was "a hundred percent marijuana, smelled like, it's like a fresh burnt marijuana, like somebody had recently smoked marijuana." (Tr. 13:18–20.) Indeed, Richey was able to characterize the strength of the marijuana odor as "moderate." (Tr. 25:4–11.) Richey's conclusion regarding the marijuana smell seem to find further support in a statement by Harrison. Though made post arrest, and therefore does not a factor directly into the probable cause calculus, Harrison explained to Bumgarner that he was "self-medicating [a gunshot wound] with marijuana." (Tr. 28:10–15.) Again, while not a fact upon which the court relies in its probable cause determination, it is a fact that tends to support the court's conclusion that Richey's testimony concerning the marijuana odor was credible.

Richey testified that the presence of the marijuana odor led to the search of Harrison's vehicle. (Tr. 9:7–20, 13:21–22.) After Harrison was taken into custody, Corporal Barrett ("Barrett") arrived on the scene with PFC James Johnson ("Johnson") to assist in the search of the vehicle. (Tr. 13: 13–23.) Richey began his search of the vehicle starting first with the driver's

side and making his way around to the passenger side. (Tr. 9:22–24.) Barrett started by opening

up the back hatch[3] to the SUV's rear storage area. (Tr. 9:25–10:1.) He then removed bags from

the rear storage area one-by-one and placed them on the pavement next to the vehicle. (Tr. 10:4–

6.) Though it is not clear how Barrett discovered the gun, when Barrett reached a white "grocery

style bag" he informed Richey that there was a gun in the bag. (Tr. 10:8–10.) Barrett then opened

the bag for Richey to look inside and, therein, he saw a black handgun. (Tr. 10:10–11.) The black

handgun was later found to have been connected to a gun store burglary where several guns were

taken. (Tr. 29:3–10.) At the conclusion of the search, the officers found no marijuana or

paraphernalia. (Tr. 18:8–20.)

## III. DISCUSSION

In support of his motion, Harrison argues that the handgun obtained as a result of the above-

described search must be suppressed as product of an unconstitutional search in violation of the

Fourth Amendment. (D.I. 36 at 2.) Specifically, Harrison argues that the search was unreasonable

under *Arizona v. Grant*, 556 U.S. 332 (2009) because the search exceeded the permissible scope

of the search incident to arrest exception to the Fourth Amendment's warrant requirement. (D.I.

36 at 2.) As a result, Harrison requests that the handgun be suppressed. (D.I. 36 at 1.)

Conversely, the government argues that the search was reasonable under the automobile

exception to the warrant requirement because Richey testified that he smelled marijuana coming

from within Harrison's SUV, which led to his search. (D.I. 37 at 3-7.) According to the

government, the marijuana odor established probable cause to conduct a full search of the vehicle.

(*Id.*) Because the government contends that the search was constitutional, the government urges

---

[3]     The Trailblazer had a rear cargo area that was open and accessible to the passenger compartment of the
SUV. (Tr. 9:21–10:3.)

the court to deny Harrison's request to suppress the handgun. (D.I. 37 at 7.) The court agrees with the government.

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. CONST. AMEND. IV. A warrantless search is presumptively unreasonable unless it is conducted pursuant to an exception to the Fourth Amendment's warrant requirement. *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006). One such exception is the "automobile exception." *United States v. Brown*, 261 F. App'x 371, 373 (3d Cir. 2008) (citing *United States v. Burton*, 288 F.3d 91, 100 (3d Cir. 2002). The automobile exception permits law enforcement officers to "search an automobile without a warrant if there is probable cause to believe that the vehicle contains contraband." *Id.* Probable cause is determined from the perspective of an objective law enforcement officer in light of the totality of the circumstances known to that officer at the time the search was conducted. *See e.g., Illinois v. Gates*, 462 U.S. 213, 269 (1983); *see also Ramos*, 443 F.3d at 759. The smell of marijuana alone is sufficient to constitute probable cause so long as it is articulable and particularized. *United States v. Ushery*, 400 Fed. App'x 674, 675 (3d Cir. 2010); *see also Ramos*, 443 F.3d at 308 ("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause"); *U.S. v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."); *U.S. v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000) (holding that the smell of raw marijuana "created probable cause to search [a car]"); *U.S. v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995) ("If an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment."). When marijuana odor is localized to within an identifiable automobile and an experienced officer testifies confirming that the odor was

indeed marijuana, the smell of marijuana will be found to have been sufficiently articulable and particularized to establish probable cause to search the vehicle. *Ushery,* 400 Fed. App'x at 676. "If probable cause exists, officers may search any part of the vehicle – including containers – that might conceal contraband." *Brown,* 261 F. App'x at 373.

Here, the smell of marijuana was sufficient to establish probable cause to search Harrison's SUV and the bags within. First, based on Richey's testimony, the smell of marijuana was particularized to Harrison's vehicle. *Ramos,* 443 F.3d at 760 (noting that for probable cause, the smell of marijuana must be particularized to a specific person or place) (citing *Humphries,* 372 F.3d at 659. Richey testified that first time he smelled the marijuana odor was when Stagg opened the door to Harrison's SUV and he smelled the odor coming from within the vehicle. (Tr. 15:3–6.) He did not smell the marijuana upon approaching the vehicle before the door was opened and he did not observe any other cars or pedestrians near the vehicle that could have been a source for the smell. (Tr. 8:25–9:6, 11:15–16).

Second, the smell of marijuana was articulable. Richey testified that there was a "moderate" odor of "fresh[ly] burnt" marijuana emanating from Harrison's vehicle when the door was opened. (Tr. 13:16–20, 25:4–11.) Richey was familiar with the smell because his experience as an officer required him to come into contact with marijuana in various forms "several hundred times." (Tr. 6:9–17, 7:15–17.) Further, only after smelling the marijuana did Barrett and Richey conduct a search of the vehicle. (Tr. 13:21–22.) This search properly included the plastic grocery style bags located in the rear cargo area of the vehicle. (Tr. 9:21–10:11); *see United States v. Ross,* 456 U.S. 798, 809 (1982) ("In its application of *Carroll,* this Court in fact has sustained warrantless searches of containers found during a lawful search of an automobile.") Therefore, the automobile exception to the Fourth Amendment's warrant requirement is satisfied because the smell of

marijuana was particularized and articulable, thus establishing the requisite probable cause to conduct a search of Harrison's entire vehicle and bags within.

Harrison's arguments to the contrary are unavailing. While a search incident to arrest is an exception to the warrant requirement, it is not the *only* exception on which the government could rely. *Gant,* 556 U.S. at 346 ("Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances . . ."). As noted, Richey smelled marijuana emanating from Harrison's SUV when the door was opened and, as a result, the officers conducted a search for contraband. The court concludes that this search falls squarely within the automobile exception to the Fourth Amendment and thus, need not evaluate the constitutionality of the search under any other exceptions.

Defendant also argues that because "the personal use of marijuana in Delaware was decriminalized in December of 2015," there could not have been a "crime of arrest" to satisfy the probable cause requirement. (D.I. 36 at 3.) The decriminalization of marijuana does not affect the court's reliance on well-established precedent that the smell of marijuana establishes probable cause. Even if marijuana has been decriminalized in some instances in Delaware, every possession and usage of marijuana was not made legal. *See* 16 Del. C. § 4764(d). Indeed, the Delaware General Assembly has made clear that the legal possession of marijuana is limited to personal quantities and cannot be consumed in certain settings specified by the statute. *See id.* Further, the statute explicitly states that "[n]othing contained herein shall be construed to repeal or modify any law or procedure regarding search and seizure." 16 Del. C. § 4764(h). Thus, even in jurisdictions such as Delaware where marijuana has been decriminalized, it remains well settled law in the Third Circuit that the smell of marijuana, where particularized and articulable, may establish probable cause to conduct a warrantless search. *E.g., United States v. Jackson,* 682 F.

App'x 86, 88 (3d Cir. 2017) ("Case law within this Circuit and others has concluded that so long as the smell of marijuana can be particularized to a specific person or place, it is sufficient to establish probable cause."). Therefore, the court finds that the automobile exception to the Fourth Amendment's warrant requirement applies to the facts of this case.

## IV.    CONCLUSION

As a result of the court's finding that the officers' search did not violate any of Harrison's constitutional guarantees, the court denies Harrison's motion to suppress.

Dated: March 15 , 2018

_____
UNITED STATES DISTRICT JUDGE